**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:20-cv-62202-CANNON/STRAUSS**

ADELHEID PIRLEIN

      Plaintiff,

vs.

ETHICON, INC. and
JOHNSON & JOHNSON,

      Defendants.

      _____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 56(a), Local Rule 56.1, the Court's Order permitting the filing of a renewed Motion for Summary Judgment (Doc. 108), and the Court's Amended Scheduling Order (Doc. 123), Defendants Ethicon, Inc. and Johnson & Johnson move for summary judgment on all remaining claims asserted by Plaintiff Adelheid Pirlein.

Summary judgment should be entered on any of the following grounds:

*First*, all of Plaintiff's remaining claims are barred by the four-year Florida statute of limitations. Plaintiff filed suit on August 6, 2012—meaning that if her claims accrued at any point before August 6, 2008 (four years earlier), the action is time-barred.  Several record entries reveal that the action accrued before that date.

Ms. Pirlein suffered from pelvic organ prolapse and stress urinary incontinence.  On March 19, 2008, her surgeon (Dr. Herman Epstein) implanted Ethicon's Prolift and TVT-O devices, respectively, to treat those conditions.  On **May 5, 2008**, Ms. Pirlein returned to Dr. Epstein with complaints of bleeding, which he attributed to exposure of the Prolift mesh—and by that date, Ms.

Pirlein understood that she had experienced an unanticipated, adverse event associated with the Prolift device.  Thereafter, on **July 14, 2008**, Dr. Epstein observed that Ms. Pirlein presented with continued complaints of bleeding resulting from two areas of exposed mesh, and he recommended revision of the mesh.  And on **August 5, 2008**, Dr. Epstein recorded in a History & Physical that Ms. Pirlein had been previously diagnosed with mesh exposure, continued to have bleeding, and that she was irritated and agitated with her continued complaints of vaginal bleeding.  Further, Plaintiff's sworn answers to interrogatories unequivocally state that Plaintiff attributed her asserted injuries to a defect in the mesh products by July 2008 at the latest, and in any event before she was evaluated for her second surgery on August 5, 2008.  Any of the above events was sufficient to trigger the four-year limitations period under Florida law prior to the limitations cutoff.  Plaintiff's action is time-barred.

***Second,*** and in addition to the statute of limitations, certain individual claims are subject to summary judgment because they are not cognizable and/or fail for lack of evidence:

- Plaintiff's claims for Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), and Negligent Misrepresentation fail as a matter of law because, under Florida's learned intermediary doctrine, any representations were made to Plaintiff's prescribing physician—not to Plaintiff—and likewise, Plaintiff could not have relied on any representations to her.

- Plaintiff's claim for Negligent Infliction of Emotional Distress (Count X) fails for lack of evidence.

- Plaintiff's claim for Gross Negligence (Count XIV) fails because it is not a stand-alone, cognizable claim under Florida law.

***Third,*** also in addition to and independent of the other grounds, this case involves the implantation of two Ethicon products: both the Prolift and TVT-O. Plaintiff's case-specific expert, however, offers no admissible opinion that an alleged defect in the *TVT-O* was the proximate cause of Plaintiff's stated injuries. Accordingly, any claims related to the TVT-O device are subject to summary judgment.[1]

## MEMORANDUM OF LAW AND ARGUMENT

### I.   APPLICABLE LAW

#### A.   Summary judgment standard

Summary judgment must be entered when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). As the Eleventh Circuit has explained, the district court must view the evidence in the light most favorable to the non-moving party," but the ultimate standard is that there exists "no genuine issue of material fact." *100079 Canada, Inc. v. Stiefel Labs., Inc.*, 596 F. App'x 744, 747 (11th Cir. 2014) (citing *Liberty Lobby*, 477 U.S. at 248)).

#### B.   Choice of law

This Court, sitting in diversity, applies the choice of law test of Florida, the forum state. Florida applies the "most significant relationship" test of Sections 145 and 146 of the Restatement (Second) of Conflicts of Law in personal injury actions. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). Here, Plaintiff agrees that Florida has the most significant relationship to her claims, as she is currently a resident of Florida, was a resident of Florida at the

---

[1] Should the Court grant Defendants' forthcoming motions to exclude Plaintiff's experts, summary judgment will be required based on the lack of general and/or specific causation—either of which is fatal to Plaintiff's claims. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005); *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1256 (11th Cir. 2010).

3

time of her implantation surgery and during the majority of her subsequent medical care and treatment, aside from a brief period of time in which she lived in Arizona. (Doc. 73 at 3-4). Accordingly, Florida law applies to Plaintiff's substantive claims.

## II.     LAW & ANALYSIS

### A.     Plaintiff has stipulated that she is no longer pursuing certain claims.

In the Response to Defendants' Motion for Summary Judgment that was filed in the MDL (Doc. 73), Plaintiff stated that she is no longer pursuing certain claims; further, on January 13, 2021, the parties filed a Joint Stipulation regarding the following counts that Plaintiff is no longer pursuing:

- Count I: Negligence (as to Manufacturing Defect)
- Count II: Strict Liability – Manufacturing Defect
- Count IV: Strict Liability – Defective Product
- Count XI: Breach of Express Warranty
- Count XII: Breach of Implied Warranty
- Count XIII: Violation of Consumer Protection Laws
- Count XV: Unjust Enrichment

(Doc. 119). Summary judgment should be entered on these counts.

This leaves the following: Negligence (Count I, as to Failure to Warn and Design Defect), Strict Liability – Failure to Warn (Count III), Strict Liability – Design Defect (Count V), Common Law Fraud (Count VI), Constructive Fraud (Count VII), Negligent Misrepresentation (Count IX), Negligent Inflection of Emotional Distress (Count XII), and Gross Negligence (Count XIV) ("remaining claims").

> **B.    All of Plaintiff's remaining claims are barred by the four-year Florida statute of limitations.**
>
> **1.    Under Florida law, a claim accrues when plaintiff has notice of the possible invasion of her legal rights, discoverable upon the exercise of due diligence.**

Plaintiff's remaining claims are subject to Florida's four-year statute of limitations. *See* Fla. Stat. § 95.11(3)(a), (e), (j), (k), (p). The limitations period runs "from the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence . . . ." Fla. Stat. Ann. § 95.031(2)(b).

The Florida Supreme Court explained the operation of this standard in *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991). In *Bogorff*, the plaintiffs filed suit when their minor child suffered personal injuries after ingestion of a leukemia drug, methotrexate. As to their claims against the drug manufacturer, the Florida Supreme Court held that the action was time-barred: "[b]y July 1972 the Bogorffs were clearly aware of Adam's paralyzed and brain-damaged condition. They knew sometime in 1972 that the child had been treated with methotrexate. This is not a case where a drug was ingested and the alleged effects did not manifest themselves until years later. . . . Rather, in this case, the alleged effects of methotrexate manifested within months of Adam's last treatment." *Bogorff*, 583 So. 2d at 1004. The court acknowledged that the child's condition:

> [M]ight not have been easily distinguishable from the effects of leukemia on his system. [Yet] [t]he knowledge required to commence the limitation period, however, does not rise to that of legal certainty. Plaintiffs need only have notice, through the exercise of reasonable diligence, of the possible invasion of their legal rights. . . . The Bogorffs were aware not only of a dramatic change in Adam's condition, but also of the possible involvement of methotrexate. Such knowledge is sufficient for accrual of their cause of action. Furthermore, because knowledge of the contents of accessible medical records is imputed, the Bogorffs had constructive knowledge of medical opinion that the drug may have contributed to the injury in 1977. In either event, the Bogorffs had sufficient knowledge, actual or imputed, to commence the limitation period more than four years prior to filing their complaint in December 1982.

*Id. See also, e.g.*, *Parcell v. Mentor Worldwide LLC*, No. 8:16-CV-3507-T-27TGW, 2017 WL 2462591, at *2 (M.D. Fla. June 6, 2017) (granting summary judgment; relying on the Florida Supreme Court's ruling in *Bogorff*, and explaining that "[f]acts that give rise to a products liability action are deemed discoverable with the exercise of due diligence if a plaintiff knows that she suffered an injury and has enough information to determine there is a possible causal link between her injury and the defendant's product").

Further, "Florida law does not require that Plaintiff know the full extent of [her] injury. Plaintiff need only have notice of the possible invasion of [her] legal rights." *Doe v. Cutter Biological*, 813 F. Supp. 1547, 1555 (M.D. Fla. 1993), aff'd, 16 F.3d 1231 (11th Cir. 1994), and aff'd, 66 F.3d 342 (11th Cir. 1995) (citing *Bogorff*, 583 So.2d 1000 (Fla.1991)). Nor is a medical diagnosis necessary for a cause of action to accrue and trigger the limitations period. *Hecht v. R.J. Reynolds Tobacco Co.*, 710 F. App'x 794, 798 (11th Cir. 2017). Instead, a "cause of action accrues when the accumulated effects of the deleterious substance manifest themselves to the claimant in a way which supplies some evidence of a *causal relationship* to the manufactured product." *Id.* (quoting *Carter v. Brown & Williamson Tobacco Corp.,* 778 So. 2d 932, 934 (Fla. 2000)). The plaintiff need not have actual knowledge of the causal relationship: it is sufficient "that the Plaintiff had information which would lead a reasonably careful person of the same age, mental capacity, intelligence, training, and experience to make inquiry through which he would surely learn certain facts . . . ." *Id.* at 801 (quoting *Powell v. Radkins*, 506 F.2d 763, 764 n.2 (5th Cir. 1975)). As the district court explained in *A.P. ex rel. Ferez v. GlaxoSmithKline, LLC*, No. 13-23246-CIV, 2014 WL 3928522, at *2 (S.D. Fla. Aug. 12, 2014): "[c]ourts have interpreted this to mean "that the statute of limitations on a product liability action begins to run when a

plaintiff (1) knows that she was injured, and (2) has notice of a possible connection between her injury and the product at issue."

The MDL court, which governed the Ethicon pelvic mesh cases (including this one until remand) explained Florida law under this same standard: "'[t]he knowledge required to commence the limitation period [ ] does not rise to that of legal certainty.' Rather, a '[p]laintiff need only have notice of the possible invasion of his legal rights' discoverable 'upon the exercise of due diligence.'" *In re Bos. Sci. Corp., Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-CV-5131, 2015 WL 1405493, at *3 (S.D.W. Va. Mar. 26, 2015), *aff'd sub nom. Fleming v. Bos. Sci. Corp.*, 627 F. App'x 231 (4th Cir. 2015) (internal citations omitted); *Oliver v. Bos. Sci. Corp.*, No. 2:13-CV-01736, 2015 WL 5838506, at *3 (S.D. W. Va. Oct. 5, 2015). As the MDL Court explained, "to trigger the limitation period in product liability actions, Florida law only requires that a plaintiff be aware of her injuries following exposure to the alleged defective product. Critically, Florida law does not require a plaintiff to have awareness of the alleged negligent act." *Fleming*, 2015 WL 1405493, at *4 (internal quotations omitted), *aff'd*, 627 F. App'x 231 (4th Cir. 2015).

The district court in *Parcell* ruled similarly, granting summary judgment in a case involving a pelvic mesh product under Florida's statute of limitations. There, the record showed that the plaintiff "knew of the exposed mesh when she presented to Dr. Davila in June 2006 with symptoms of urine loss and vaginal discharge. Dr. Davila diagnosed her with 'mesh erosion, ObTape.' She underwent surgery in July 2006 to remove the ObTape. She knew of her distinct injury and the possible causal connection between her injury and her exposure to the ObTape by 2006. Accordingly, the statute of limitations applicable to all of her claims against Defendant expired by the time she filed her Complaint in 2014." *Parcell*, 2017 WL 2462591, at *2.

7

Another instructive decision is *Whitty v. Covidien LP*, No. 3:13-CV-1176-J-39PDB, 2015 WL 13790808, at *3 (M.D. Fla. May 5, 2015), *report and recommendation adopted*, No. 3:13-CV-1176-J-39PDB, 2015 WL 13790806 (M.D. Fla. May 29, 2015). The district court granted summary judgment on the statute of limitations under Florida law where (1) the plaintiff knew she had undergone a hernia surgery involving the implantation of a mesh patch six months earlier; (2) she had experienced issues that prompted her to report "infected mesh"; (3) she obtained her doctor's opinion that the mesh patch "appeared" infected; and (4) she had scheduled its removal. From those facts, the court held that the plaintiff had discovered, or should have discovered, her injury and its possible connection to the mesh patch to commence the limitations period. *Id.* (citing *Bogorff*, 583 So. 2d at 1004). The court found that the limitations period started on March 25, 2009, requiring her to file a complaint by March 25, 2013—and because she did not file until one week later, on April 1, 2013, her claims were time-barred. *Id.*

Other courts applying Florida's statute of limitations are in accord. *See also, e.g.*, *In re Trasylol Prod. Liab. Litig.*, No. 08-80401, 2010 WL 6098570, at *8 (S.D. Fla. Mar. 8, 2010) (granting summary judgment under Florida statute of limitations and *Bogorff*; holding action time-barred where plaintiff filed her action more than four years after she had reason to suspect causal relationship between Trasylol and her renal failure); *A.P. ex rel. Ferez v. GlaxoSmithKline, LLC*, No. 13-23246-CIV, 2014 WL 3928522, at *3 (S.D. Fla. Aug. 12, 2014) (granting summary judgment under Florida law where plaintiff had actual and constructive knowledge of the possible invasion of her legal rights; applying *Bogorff* and finding that plaintiff's "deposition testimony reveals that she also had actual knowledge of the invasion of her legal rights from the day A.P. was born. By her own admission, [she] suspected that Paxil was the cause of A.P's condition almost immediately") (citations omitted).

> **2.     Plaintiff's claims accrued by May 5, 2008, and no later than August 5, 2008, so Plaintiff cannot establish that her action was timely filed.**

The same conclusion—a finding that the action is time-barred—is warranted here, because Plaintiff's claims accrued more than four years before she filed suit—i.e., before August 6, 2008.

Plaintiff suffered from severe pelvic organ prolapse and stress urinary incontinence, and these conditions were negatively affecting her quality of life to the point that she wanted to undergo surgery.  Joint Stmt. of Undisputed Facts ("JSUF") ¶1-6; Defs.' Stmt. of Material Facts ("SMF") ¶1-7.  To treat these conditions, on March 19, 2008, Plaintiff's ob/gyn, Dr. Herman Epstein, implanted two Ethicon mesh products: the Prolift device (to treat Plaintiff's pelvic organ prolapse) and the TVT-O (to treat her stress urinary incontinence).  JSUF ¶8.

After the implantation surgery, Plaintiff followed up with Dr. Epstein on May 5, 2008. JSUF ¶9; SMF ¶8.  At the **May 5, 2008**, visit, she reported complaints of bleeding.  SMF ¶9.  Also at that visit, Dr. Epstein detected an exposure of the mesh.  JSUF ¶10; SMF ¶9-10.  More specifically, the mesh exposure was located in the mid-vaginal wall, and Plaintiff had bleeding which Dr. Epstein attributed to the mesh exposure.  SMF ¶9-10.  Dr. Epstein informed Plaintiff that her bleeding was attributable to the mesh exposure, SMF ¶10, and also told Plaintiff to return in six weeks to check the exposure—and that there would be a surgical procedure to trim down the exposure if necessary.  JSUF ¶11.  A short time later, on **May 22, 2008**, Plaintiff called Dr. Epstein's office and reported that she was having a "problem with bleeding."  JSUF ¶12.

Plaintiff understood by this time (i.e., by May 2008) that she had experienced an unanticipated adverse effect.  SMF ¶13.  As Dr. Epstein testified, potential surgery to treat a mesh exposure was not an intended outcome of the Prolift surgery.  SMF ¶11-12 (testimony by Dr. Epstein that he believed erosions could be easily fixed with a clipping and use of estrogen, and

that no one from Ethicon told him that the risk of erosions would require more than just simple clipping).

Thereafter, on **July 14, 2008**, Plaintiff had another follow-up visit with Dr. Epstein. JSUF ¶13; SMF ¶24. She was still experiencing exposure and bleeding, *see* JSUF ¶14, and she was distressed by the condition. SMF ¶14 (testimony by Dr. Epstein explaining that although the Prolift had worked to treat her pelvic organ prolapse and that the condition of her pelvic floor was "very good," she was experiencing bleeding attributable to mesh exposures and this upset Plaintiff); Am. Pl. Fact Sheet, 6(b)-(d); *see also* Pirlein Dep. 96:1-97:18 (confirming her sworn interrogatory answers that she first experienced symptoms that she now relates to the defective mesh product "approximately five months after the initial surgery"); *id*. 98:14-23 (testifying that the reason she called the mesh "defective" was because it had to be removed after the exposure), 98:24-99:18; 100:17-25; 103:8-18; 107:3-25 (confirming her sworn answers in the Plaintiff Fact Sheet that she was suffering from vaginal irritation and bleeding and was not able to have sexual intercourse).

Dr. Epstein performed a physical examination and observed mesh exposures on both the anterior and posterior vaginal wall. JSUF ¶15. He informed Plaintiff that she had two mesh exposures, JSUF ¶15, SMF ¶15, which had worsened over the month. SMF ¶15.

Because she was irritated by the bleeding from the mesh exposure, Plaintiff requested a surgical repair: she "didn't like the idea that she had the bleeding, and she was distressed over that." SMF ¶16 (testimony by Plaintiff that about five months after her mesh implantation surgery, she was irritated and aggravated and requested a surgical repair).

Dr. Epstein performed a history & physical on August 5, 2008. SMF ¶17 (citing Med. Records, Aug. 5, 2008: Physician Orders for History & Physical,

PIRLEINA_FLMCN_MDR00031; Surgical Sched. Form for outpatient "revision of mesh exposure," Outpatient Servs. Preop. Instr., PIRLEINA_FLMCN_MDR00015; Med. Record, History & Physical, Aug. 5, 2008, PIRLEINA_FLMCN_MDR00006-7 (also identifying "Previous vaginal mesh suspension with exposure, not responding to outpatient management. The patient will have surgical repair of the above."). Plaintiff understood this procedure would be to fix the exposed mesh. SMF ¶18.

Dr. Epstein performed surgery to treat the mesh exposures from the Prolift on August 6, 2008. JSUF ¶16..

Specific to the **July 14, 2008**, follow-up visit, and the **August 5, 2008**, examinations the day before her August 6, 2008, surgical revision procedure, Plaintiff provided the following, sworn answers to interrogatories—all of which further demonstrate that she was on notice to trigger the limitations period at least by July 14, 2008, and in any event no later than August 5, 2008:

> b.  When is the first time you experienced symptoms of any of the bodily injuries you claim in your lawsuit to have resulted from the pelvic mesh product(s)?
>
> **I began experiencing problems that I now relate as being caused by the defective mesh product that was implanted approximately five months after the initial surgery.** At the time I thought the problems were related to me personally, or perhaps caused by some other factor besides the mesh. I had no reason to suspect the mesh to be defective and root cause of these problems. In fact, I was told the mesh would fix the problems.
>
> c.  When did you first attribute these bodily injuries to the pelvic mesh product(s)?
>
> **When I had surgery in August of 2008. I was suffering from vaginal irritation and bleeding and had developed different health issues that according to my doctors in August of 2008, were caused by the exposed mesh**.
>
> d.  To the best of your knowledge and recollection, please state approximately when you first saw a health care provider for each of those bodily injuries you claim to have experienced relating to the pelvic mesh product(s):

> <u>After the mesh implant surgery on March 19, 2008, I recall experiencing some initial post-surgery discomfort. However, **my pain and suffering progressively worsened sometime after I healed from the surgery and later became so severe that I made an appointment to see Dr. Epstein for my vaginal pain and bleeding approximately end of July 2008**</u>.

SMF ¶14 (citing Am. Pl. Fact Sheet, Dec. 14, 2020, at 6(b)-(d) (emphasis added); Pirlein Dep. 96:1-97:18, 98:14-23, 98:24-99:18, 100:17-25, 103:8-18, 207:3-25 (also testifying as to symptoms including irritation, vaginal bleeding, pain and problems with sexual intercourse "approximately five months after the initial surgery")).

The record thus shows that Plaintiff's action accrued before August 6, 2008, and that she cannot establish her action was timely filed under tolling principles. The Eleventh Circuit's decisions in *Perryman v. Mentor Worldwide, LLC*, 748 F. App'x 212 (11th Cir. 2018) and *Eghnayem v. Boston Scientific Corp.*, 873 F.3d 1304, 1323 (11th Cir. 2017) further illustrate that summary judgment is appropriate here. In *Perryman,* the Eleventh Circuit determined that the Florida limitations period was not triggered where the plaintiff had a minimal procedure, having a portion of her mesh excised. And in *Eghnayem*, the plaintiff "[e]xhibit [ed] one new symptom" of urinary incontinence, which the court found was not so obviously unusual as to indisputably put the plaintiff on notice about her claim; incontinence, the court held, "is a more dramatic symptom than some, but judgment as a matter of law is a high standard, and it was not 'patently clear' or 'obvious'" that the plaintiff's single new symptom was "sufficiently distinct" from what "might be expected after vaginal surgery." *Eghnayem*, 873 F.3d at 1324.

Here, the record demonstrates that Plaintiff's stated symptoms are quantitatively and qualitatively different than the plaintiffs' conditions in *Eghnayem* and *Perryman*. Unlike those cases, Dr. Epstein testified that he did not anticipate that Plaintiff would need follow-up surgeries. *See, e.g.*, SMF ¶11-13. Moreover, Plaintiff testified not only that she was experiencing problems

12

with continued bleeding for which she sought repeated medical treatment beginning in May 2008 (*see, e.g.,* JSUF ¶9-15; SMF ¶8-16), but that she was distressed at her continued bleeding—to the point where she sought surgical correction (*see, e.g.,* SMF ¶14-16).

The facts, here, point to one conclusion: before August 6, 2008 (i.e., four years before the Complaint was filed on August 6, 2012), Plaintiff had "enough information to determine there [was] a possible causal link between her injury and the defendant's product," as the Florida Supreme Court articulated in *Bogorff*. Because Plaintiff failed to file suit within that four-year window of time, her action is subject to summary judgment.

    **C.**    **In the alternative, individual claims are subject to summary judgment.**

        **1.**    **Plaintiff's fraud- and misrepresentation-based claims (Counts VI, VII, VIII, IX) fail because, under the learned intermediary doctrine, any representations by Ethicon were made only to the implanting surgeon, Dr. Epstein, not to Plaintiff herself.**

Plaintiff asserts several claims sounding in fraud or misrepresentation: Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), and Negligent Misrepresentation (Count IX). These claims are not cognizable. As a matter of law under Florida's "learned intermediary" doctrine, any representations were made only to the implanting surgeon—not to Plaintiff herself.

The Florida Supreme Court recognizes the learned intermediary doctrine in cases where the product (here, a medical device) may only be prescribed and implanted by a licensed physician. *See Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 105 (Fla. 1989). In these cases, "a manufacturer of prescription drugs or products discharges its duty to warn by providing the physician with information about risks associated with those products." *E.g., Salinero v. Johnson & Johnson*, 400 F. Supp. 3d 1334, 1345–46 (S.D. Fla. 2019) (citing, e.g., *Felix*, 540 So. 2d at 104). "Where the learned intermediary doctrine applies, 'the duty to warn is directed to physicians rather

than patients," because the "prescribing physician acts as an intermediary between the manufacturer and the consumer, weighing the potential benefits of a device against the dangers in deciding whether to recommend it to meet the patient's needs." *Id*. (citing *Felix*, 540 So. 2d at 104); *Beale v. Biomet, Inc.,* 492 F. Supp. 2d 1360, 1371-73 (S.D. Fla. 2007) (under Florida law, the duty of the manufacturer of a prescription drug or device runs to the physician rather than the patient); *Baker v. Danek Med.*, 35 F. Supp. 2d 875, 881 (N.D. Fla. 1998) ("manufacturers of prescription medical products have a duty only to warn physicians, rather than patients, of the risks associated with the use of a product"); *Mubita v. Boston Sci. Corp.*, No. 2:13-CV-11955, 2015 WL 5838515, at *4-5 (S.D. W. Va. Oct. 5, 2015) (applying Florida law).

In light of the learned intermediary doctrine, Plaintiff's claims of fraud and/or misrepresentation fail. I.e., Plaintiff did not receive, and could not have relied on, any alleged representations or misrepresentations from Ethicon. Instead, any representations by Ethicon were made to Dr. Epstein, the prescribing physician. And "[s]imilarly, the ultimate consumer of an alleged defective product cannot prove reliance on a misrepresentation of fact about which she has no knowledge*." See, e.g., Cruz v. Mylan, Inc*., No. 8:09CV1106T17EAJ, 2010 WL 598688, at *3 (M.D. Fla. Feb. 17, 2010). Given Florida's recognition of the learned intermediary doctrine, any fraud- or misrepresentation-based claims are subject to summary judgment. And as the MDL Court and this Court have held, such claims are not independently cognizable because they are merely "re-packaged" failure to warn claims. *Nunez v. Coloplast Corp*., 461 F. Supp. 3d 1260, 1267 (S.D. Fla. 2020) (citing *Huskey v. Ethicon, Inc*., 29 F. Supp. 3d 736, 741–43 (S.D.W. Va. 2014), and *Bellew v. Ethicon, Inc*., 2014 WL 6886129, at *3–4 (S.D. W. Va. Nov. 24, 2014)). This is an additional and independently sufficient ground for summary judgment.

Further, Plaintiff's claim of Constructive Fraud (Count VIII) fails. "Under Florida law, constructive fraud occurs 'when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.'" *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005). No such relationship has been (or could be) alleged, let alone proven, between Plaintiff and Ethicon. This claim is thus subject to summary judgment.

Further, Plaintiff asserts a claim for "Fraudulent Concealment" (Count VII), but it was not pleaded as a stand-alone claim under Florida law in Plaintiffs' Master Complaint in the MDL. *See* **Exhibit 1**: Pretrial Order No. 15, First Am. Master Long Form Compl., MDL No. 2327, *available at* https://www.wvsd.uscourts.gov/MDL/ethicon/orders.html, at ¶ 148-156.[2] Instead, any allegation of fraudulent concealment relates to the *plaintiff's* burden to prove, through tolling, that her action was timely filed. *See Mubita v. Bos. Sci. Corp.*, No. 2:13-CV-11955, 2015 WL 5838515, at *5 (S.D.W. Va. Oct. 5, 2015) (granting summary judgment on claim for fraudulent concealment).

On any of the above independent grounds, Plaintiff's fraud-based claims and claim for negligent misrepresentation are subject to summary judgment.

### 2. Plaintiff has no evidence for a Negligent Infliction of Emotional Distress claim (Count X).

Plaintiff asserted a claim for Negligent Infliction of Emotional Distress (Count X), but this claim is not cognizable here and would fail for lack of evidence anyway. Under Florida law, "the elements required to allege a cause of action for negligent infliction of emotional distress [are]:

---

[2] It appears Plaintiffs in the MDL understood that Florida did not recognize the claim as an independent cause of action, as the Complaint does not include Florida in the list of states that "recognize such a cause of action." *See* First Am. Master Long Form Compl. ¶149.

(1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995), cited in *Salinero v. Johnson & Johnson*, 400 F. Supp. 3d 1334, 1353 (S.D. Fla. 2019). "Generally, Florida follows the 'impact rule,' which provides that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" *Id.* "To prevail, "the physical injury must be caused by the psychological trauma." *Id.* (citations omitted).

As Judge Ungaro ruled in *Salinero*, such claim is subject to summary judgment where the plaintiff "may have suffered various physical injuries (such as her fistula), but her physical injuries allegedly were caused by defective [ ] Mesh, not by psychological trauma." *Salinero*, 400 F. Supp. 3d at 1353. *See also Nunez v. Coloplast Corp.*, 461 F. Supp. 3d 1260, 1268 (S.D. Fla. 2020) (granting summary judgment, and explaining that "[t]he Court agrees with the *Salinero* analysis and finds it applies here, as well. Plaintiff's physical injuries stem directly from the allegedly defective product—the Altis implants. This is the entire basis of Plaintiff's claims. In fact, Plaintiff's emotional distress from this ordeal was caused by the trauma from any physical injuries related to the allegedly defective product. This, of course, is the opposite of an NIED claim. Simply, there is no proof, nor any allegation much less, that her alleged emotional distress caused the physical injuries."). The same factual setting is present here; Plaintiff claims that she suffered various physical injuries from the Prolift and TVT-O devices (*see* Am. Pl. Fact Sheet, at 7)—not by psychological trauma. This claim is subject to summary judgment.

### 3. Gross negligence (Count XIV) is not a cognizable, stand-alone claim.

Under Florida law, "gross negligence is a heightened standard of proof to receive punitive damages under Florida law and not a stand-alone claim." **Exhibit 2**: *Smith v. Ethicon, Inc.,* Case No. 4:20-cv-00394 (N.D. Fla. Dec. 28, 2020) (citing *Johns-Manville Sales Corp. v. Janssens*, 463 So. 2d 242, 247 (Fla. 1st DCA 1984) and dismissing claim for "gross negligence" in pelvic mesh case under Florida law). Plaintiff's claim for Gross Negligence (Count XIV) should be dismissed.

### D. Any claims based on the TVT-O device are subject to summary judgment.

Finally, any claims related to the TVT-O (as opposed to Prolift) product should be dismissed. Plaintiff lacks any proof that there was an alleged defect in the TVT-O that was capable of causing the asserted injuries (general causation)—in fact, Plaintiff's expert (Dr. Zipper) never prepared in this case (or any other case in the MDL) addressing general causation for the TVT-O device. Nor has he identified any specific defect in the TVT-O that did, in fact, cause Plaintiff's stated injuries (specific causation). *See* SMF ¶19-20 (citing Dr. Epstein, who testified that he never saw any reason to remove any part of the TVT-O, and the deposition testimony of Jaime Sepulveda, M.D., who confirmed there was no exposure of TVT-O; the exposure was only from the Prolift)..

Without the requisite expert testimony establishing both general and specific causation for the TVT-O device, any claims related to that product are subject to summary judgment. *See, e.g., Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295-96 (11th Cir. 2005) (affirming exclusion of plaintiffs' experts under *Daubert* and explaining that because plaintiffs "failed to make a sufficient showing for an element on which they had the burden of proof, the district court properly granted summary judgment").[3]

---

[3] The Fourth Circuit and other district courts in remanded pelvic mesh cases have entered summary judgment where the plaintiff's designated case-specific expert failed to connect a

## III. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court enter summary judgment on all remaining claims and dismiss this action with prejudice. Defendants pray for all other relief to which they are entitled.

Dated:  January 29, 2021

Respectfully submitted,

*/s/ Amanda E. Preston*
Andrew R. Kruppa
Florida Bar No. 63958
Amanda E. Preston
Florida Bar No. 123652
**SQUIRE PATTON BOGGS (US) LLP**
200 South Biscayne Blvd., Suite 4700
Miami, FL 33131
Telephone: (305) 577-7000
Facsimile:  (305) 577-7001
Email: andrew.kruppa@squirepb.com
Email: amanda.preston@squirepb.com
*Counsel for Ethicon, Inc., and*
*Johnson & Johnson*

---

specific defect in the product(s) to the asserted injuries. *Lewis v. Johnson & Johnson*, 601 Fed. App'x 205, 211 (4th Cir. 2015) (affirming district court's entry of directed verdict for Ethicon where expert testified the presence of the TVT caused plaintiff's pain, but did not testify that a defect in the TVT caused her pain); *Abt v. Ethicon, Inc*., No. 1:20-CV-0047 SRC, 2020 WL 4887022 (E.D. Mo. Aug. 20, 2020); *Nix v. Ethicon, Inc*., No. 1:19-CV-04896-SCJ, 2020 WL 5525172, at *3–4 (N.D. Ga. Sept. 14, 2020) (granting summary judgment in Ethicon's favor on where "Plaintiffs' sole expert, Dr. Daucher, offers no analysis of the design of TVT-O or any opinion on what alleged defect caused Ms. Nix's injuries. Thus, because Plaintiffs' only case-specific expert has failed to connect Ms. Nix's stated injuries to an actual defect in the design of the TVT-O, their design defect claims . . . fail as a matter of law.") (internal citations omitted); *Lynch v. Ethicon, Inc*., No. 2:20-cv-00217-SMJ, 2020 WL 5733184 (E.D. Wash. Sept. 24, 2020) (granting Ethicon's motion for summary judgment where the plaintiff's "experts have not opined that a design defect in Defendants' Mesh Products caused her injuries. Dr. Veronikis has opined that the design defects in the Mesh Products can cause an "intense inflammatory response." And Dr. Bailey opined that an inflammatory response was responsible for Lynch's pain. But without an expert opinion asserting a causal link between the general design defects identified by Dr. Veronikis and Lynch's injuries, Lynch has not established a genuine issue of material fact.") (emphasis in original); *Lampron v. Johnson & Johnson*, No. 20-CV-317-JD, 2020 WL 3452150 at *4 (D. N.H. June 24, 2020) (granting summary judgment to defendants where expert did not identify a design defect in the mesh product that caused plaintiff's complications).

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2021 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

/s/ *Amanda E. Preston*
Amanda E. Preston